Yes, good morning, Your Honors. Faye Arfa on behalf of Mr. Shaw. There's an echo. Maybe you back up just a little bit. Did you hear it? Did you hear the echo? No. Well, at least I heard it. Now I don't hear it. It didn't prevent my understanding what you were saying, but it marred the next statement you were going to make because there was an echo. Yeah, the acoustics. Yes. Ms. Arfa. Start ten minutes again, please. Okay. All right. Okay, thank you. Faye Arfa on behalf of Mr. Shaw. May it please the Court. What concerns us most about this case is it involves eyewitness identification. And as the Court knows, there's a long history of mistaken identification. And it seems that something needs to be done when you have eyewitness identification, conflicting eyewitness identification, but yet If it's conflicting identification, Ms. Arfa, it's not a matter for the jury to determine. It is, but the problem is the juries don't understand the deficiencies of eyewitness identification. Isn't that the job of the attorneys, to make the jury understand? Or maybe we should give it to the juries. But as long as we have it, it's going to be attorneys who make the juries understand. Well, the problem is, like, for instance, in this case, where the person gets up and gets, I'm absolutely positive that's the person. And it's so hard to rebut. I've always wondered why even have the identification or why even have them say, Are you absolutely sure or are you sure? I've often wondered why prosecutors get to say that. Shouldn't it be, okay, you know, you said this. I thought you were making a due process claim here. Yes. Which it sounds like as you're giving a lecture on forensic training. Okay. Well, what we're trying to say is that it was impermissibly suggestive in this case. Well, will you explain this? Let's assume we say it was too suggestive as far as one of the witnesses were concerned. You have two or three other witnesses who finally identified it. So wasn't the error as to the, is it David Brown and Darwin Brown? Yeah. I'd say many Darwin's may have been an error, but you've got the other three. Well, Clayton, the problem with Clayton is he, there were a lot of inconsistencies. I'm sorry, what? A lot of inconsistencies with Clayton. First he said the shooter had no braids. Then he said the passenger has braids. Well, he went back and forth. What he finally testified to was, yeah, this is the man. Well, yeah, but again, again. Isn't that something for the jury to decide? It is something for the jury to decide. I agree, I agree. But I don't think juries understand that just because somebody points to a person in the courtroom and says that's him, that it's necessarily that's him. But does Judge Boyer's point cause any problem with that argument that you're making? Pardon me? Judge Boyer's point was that the lawyer is there. The lawyer sees it.  Now, does that pose a problem with what you're arguing now? Well, it does. In this case, the jury did have a problem. The jury, the first jury split 6-6. Take the second jury. Okay, the second jury had a lot of questions at the end. And, in fact, there was one point where they came out and said we can't decide. But we don't know whether that has to do with identification, do we? This record. It was pretty, we don't know on this record, but that was the only issue in the case as to who was the shooter. So we have to, we can at least maybe assume that that was the case. So there should be something. In fact, in this case where you have impermissibly, in other words, if the court is saying, okay, then there's at least three people who said it was him, then why not just suppress the suggested one? I'm a little confused. You're saying there was impermissible identification because there was one-to-one identification by a photograph of Mr. Shaw in Crime Stoppers, correct? Yes, that was after the witness could not identify him. All right. He couldn't identify him, and then he did identify him in a newspaper. The newspaper was supplied to Mr. Darwin Brown by his mother, not by the police, right? The text of what was in the Crime Stoppers is not in the record, but whatever the text was was not dictated by the police. It was edited by the newspaper. What state action do you claim caused a violation of due process? Well— The supplying of the photograph by the police to Crime Stoppers? The viewing of the one-on-one photograph. The viewing of the one-on-one photograph was done by Mr. Darwin Brown at his home when his mother gave him the Crime Stoppers. Where is the state action there? Well, state action is in putting his photograph in Crime Stoppers and— Would it be state action, impermissible one-on-one identification if you were to walk down these stairs, turn to your left, and see some wanted posters through there? Well, I— They're photographs. What's more, the text of photographs show that the government has put the text in. We want these people stopped, right? Any post office has wanted photographs. Is that impermissible one-on-one? Well, that isn't, but in this case, it's a little more personal than— It's less personal for the state. The state, in the photographs in the post office, dictates the text. Here, Crime Stoppers dictated the text. Well, it was in a newspaper in the very community where the incident happened. Maybe the post office also had one. Well, honestly, I don't know how many people just look at those photographs. Probably a lot of people do, but in this case, we have somebody that was directly impacted by the shooting, who is in their neighborhood. They're worried. They're looking. They see a picture in the newspaper that specifically identifies— Let me ask you this. How does the wanted poster in the post office differ from the photograph in the Crime Stoppers? Well, it's more generic. It's more generic. It's—somebody can look at them if they— It can be various people wanted. In Crime Stoppers, don't they have various photographs? Not just one person? Actually, I don't know. Apparently, this was the photograph of Mr. Shaw being identified as the shooter. So what we're doing— Let's assume that nobody believed him. Let's assume they didn't believe him. Okay. The other three had positively identified him. Doesn't that pose a problem for you? Well, it poses a problem because— If only one person identifies, I can understand better your point. Here, one person identified, and you're saying, that's defective, blah, blah, blah, whatever you want to say about it. But three people positively identified him. So—and one eventually identified him, too. But the three people identified him. Let's say everything the other person says, I'm not sure it's this, that, or the other. But three people said, that's your man. What does the record—what do we do with that kind of record, in your view? Well, what we're trying to show is, particularly in David Brown's case, where in the first— You have to use all you've got, and I understand it. I'm not criticizing you, but on this record, what can we do? We're looking at a senseless, unnecessary, almost unimaginable shooting, aren't we? Yes. And there's just not much. Is there? Correct. But the only problem that we see is that—and I did want to save a little time for rebuttal—is that— You've got one minute. Yes. Okay, I'd like to save it for rebuttal. Thank you. May it please the Court, Deputy Attorney General Barton Bowers, on behalf of the warden. Yes, this case involves identification testimony by eyewitnesses, but not just one eyewitness. Mr. Shaw complains about the problems with the pretrial procedures used with Mr. Darwin Brown, but here, of course, we don't just have Mr. Darwin Brown. We have Mr. Robert Horn, the accomplice. Do you concede that Darwin Brown's identification was violative of due process? No, because it was not unnecessary and gratuitous under the circumstances. Serious crimes had been committed. There were no suspects that had been apprehended. The police needed to find these people, and they put a photo— they provided a photo to the newspaper who published it. There was nothing unnecessary or gratuitous about that. It turns out Mr. Shaw had fled California to New York, and when contacted on the street by the police, he attempted to flee, and was eventually tackled after trying to evade them. But really, this is a case—a compelling case for harmless error, even putting aside Mr. Darwin Brown's testimony. What do you call the error? What was the error? Well, I'm assuming the error, because we don't agree. Mr. Stensky kind of pointed that out in the case he wrote. You don't apologize unless you know there was something wrong. Let me put it this way, then. Mr. Shaw has failed to show prejudice. He's failed to show prejudice because, as you pointed out, there were three eyewitnesses. One was Robert Horn, the accomplice, who got a very good view of Mr. Shaw in the car. He drove him there. One was Mr. David Brown, who did identify Mr. Shaw in a pre-trial photographic lineup, after failing to identify him, but he did identify him pre-trial. Well, Horn was the driver, right? Correct. And he was also the accomplice. Correct. Whose view, whose testimony was instructed to be taken with caution. The jury was instructed to view his testimony with care and caution. With care and caution. Not with distrust, but with care and caution. Correct. And David Brown was not consistent and singular in his identification, correct? He went back and forth. That's true. Now, who was the third person who identified him? Clayton Brown was an eyewitness who identified Mr. Shaw as the shooter. All right. Any problems with Mr. Clayton Brown's ID? No greater than with any other eyewitness. But, of course, we're talking about the cumulative identification of Mr. Shaw, as the shooter in this case, by multiple eyewitnesses. And we don't just have eyewitness testimony in this case. We have motive because Mr. Shaw is the brother of Mr. Abrams, who had been shot at that same location less than an hour before. We had testimony putting Mr. Shaw as leaving the hospital with Mr. Horn, the accomplice, just before the shooting. And, of course, we have Mr. Shaw's actions of fleeing the state and fleeing from the police as consciousness of guilt. All of these facts make it impossible for Mr. Shaw to show prejudice in this matter. And unless there are any further questions from the court, the warden is willing to submit the matter. You haven't discussed the other issues which were raised in the briefs, the accomplice instruction or consecutive sentences, but neither has your opponent, so that's fine. I can do it very quickly in 30 seconds. There is no constitutional right to special instruction regarding accomplice testimony. In fact, California law imposes greater requirements than does the Federal Constitution because California law requires corroboration, and California law requires that the jury be instructed to view the accomplice testimony with care and caution, greater than the Federal Constitution. And as far as the Sixth Amendment claim goes, that's totally defeated by the Supreme Court's case of Oregon v. Ice. And, in fact, the defendant, Mr. Shaw, didn't even reply in his brief. Thank you very much. All right. Ms. Arfo. Yes. Just briefly in response to what counsel stated, there is a problem when you have this cumulative eyewitness identification. That's the problem. You get weak identification plus weak identification plus weak identification, leading to reasonable doubt. That's the problem. You have all of these people. Mr. Horne had a self-interest. In fact, at trial, Mr. Shaw got up and explained that he had nothing to do with it, and he brought in Mr. Abrams, who was his brother, to testify that it was Mr. Horne who had all the motive. So the problem is with identification, the cumulative effect of weak, weak, weak. And that's what we always see the problem. Secondly, I cited all sorts of Supreme Court state law in my opening brief, at page 21 to 23, about the accomplice instruction, that it should be viewed with distress as opposed to caution. And counsel, in his closing argument, which I included in my excerpts, he went on and on about how it shouldn't be viewed. Is it your position that the only constitutionally permissible instruction to be given on accomplice testimony is that it be viewed with distrust rather than care and caution? It should be, yes. I didn't ask that. Oh, it should be, yes. No, I didn't ask that. I said, it's your position that you said it should be. Now, do you have any cases that say that? Like Supreme Court cases saying, don't use the words care and caution, folks. Use the words distrust. Well, I believe they say greatest care and caution, which is a little higher standard than just caution. No distrust. No, I agree. Thank you very much. Thank you. The case of Shaw v. Kirkland is being submitted.
judges: Farris, Noonan, Bea